# OHIO APPELLATE AND CIRCUIT COURT REPORTS.

## NEW SERIES—VOLUME XXV.

---

CAUSES ARGÜED AND DETERMINED IN THE COURTS OF
APPEAL AND THE CIRCUIT COURTS
OF OHIO.

---

### WRIT OF PROHIBITION IN A DIVORCE PROCEEDING.

Court of Appeals for Hamilton County.

STATE OF OHIO, ON THE RELATION OF MARIE GELLNER, v. JOSEPH
B. KELLEY, JUDGE OF THE INSOLVENCY COURT.

Decided, March 20, 1916.

*Prohibition—Action for a Writ of—In a Proceeding for Divorce Where
Jurisdiction Was Denied—High Prerogative of a Writ of Prohibition
—Can Not be Made to Serve the Purpose of a Writ of Error—When
it May be Invoked—Power to Create a Court Implies Power to
Change its Jurisdiction—Pending Cases Where Jurisdiction is With-
drawn—And no Provision Made for Their Transfer to Another
Court—Are Terminated and Should be Held for Naught.*

The amendment of Section 1637, General Code, of February 17, 1914
(104 Ohio Laws, 179), operated to withdraw from the Court of
Insolvency of Hamilton County jurisdiction to hear and determine
actions for divorce and alimony after December 31, 1914, even
though pending at that date.

*J. G. DeFosset,* for relator.
*C. W. Baker* and *Jos. B. Kelley,* contra.

JONES (Oliver B.), J. ·

This is an action for a writ of prohibition brought by the state, on the relation of Marie Gellner, as relator, against Joseph B. Kelley, judge of the Insolvency Court of Hamilton County, Ohio, as respondent, to prevent him as such judge from proceeding to hear and determine a certain divorce proceeding in said court in which said relator is the defendant.

It is averred in the petition and admitted in the answer that on August 20, 1914, a petition for divorce was filed in said insolvency court by one John Gellner against his wife, Marie Gellner, the relator herein, as defendant; that on August 29th, 1914, said Marie Gellner filed an answer and cross-petition in said cause praying for divorce and alimony; that on February 18, 1915, an amended petition was filed by said plaintiff; and on May 21, 1915, said defendant was granted leave to withdraw her original answer and cross-petition and file an amended answer, which was thereupon done.

It appears that an order was made by said court on September 19, 1914, requiring the plaintiff in said cause to pay the defendant, as alimony, for the support of herself and minor children, the sum of $4.50 every week, and that on February 5, 1915, charges in contempt were filed against said plaintiff for the failure to pay said alimony; and that said cause was on September 15, 1915, heard in part by said insolvency court. It is averred by plaintiff that at such hearing testimony was offered by plaintiff to show that he lived in the village of Dakota, state of West Virginia, with his wife and children and the family of defendant's father and mother, from about November, 1912, to March, 1914, and that he had not been a resident of the state of Ohio for a year prior to the filing of his petition on August 20, 1914. Said relator avers that at the conclusion of plaintiff's testimony in said divorce trial defendant moved for a dismissal of plaintiff's petition, which motion was overruled, and defendant then offered testimony as to the residence of plaintiff and at the conclusion of all the testimony again moved the court to dismiss the plaintiff's petition, for want of jurisdiction, which

said motion was overruled, to which ruling defendant then excepted, and the cause was thereupon continued by the court, for further hearing, to January 15, 1916.

Under Section 1637, General Code, courts of insolvency were given jurisdiction concurrent with the court of common pleas in certain matters, and among others in "actions for divorce and alimony." On February 6, 1914, an act was passed by the General Assembly entitled:

"An act to amend Section 1637 of the General Code to take away the jurisdiction of the Insolvency Court of Hamilton County in divorce and alimony cases."

By this act Section 1637 was re-enacted in its original form, except that in paragraph 9 thereof where certain matters were enumerated in which said court of insolvency was given jurisdiction, after the words "and actions for divorce and alimony" were added the words:

"except the court of insolvency in Hamilton county shall not have jurisdiction in actions for divorce and alimony after December 31st, 1914."

Relator prays for a writ of prohibition against proceeding in said divorce action upon two grounds:

1. The Court of Insolvency in Hamilton County has had no jurisdiction in the subject-matter of the action since December 31, 1914.

2. The said court has no jurisdiction of the action for the reason that the plaintiff was not a resident of Ohio for at least one year before filing his petition. (General Code, 11980.)

The writ of prohibition is a remedy brought into the jurisprudence of Ohio by amendments to the Constitution which became effective January 1, 1913. Original jurisdiction in prohibition is vested in courts of appeals by Section 6, Article IV of the Constitution. No statutory provisions have as yet been enacted laying down rules of procedure for the exercise of this jurisdiction.

Cases of prohibition have, however, been entertained both in courts of appeals and in the Supreme Court. The case of *Ex Parte Oldham*, 19 C.C.(N.S.), 270, was one in which it was sought to restrain the judges of the courts of common pleas from acting as a conservancy court. The case of *State, ex rel Berry*, v. *Cushing, Judge*, decided by this court, *post*, was an action in which it was sought to prohibit a judge of the common pleas court from proceeding to hear a motion to dissolve an attachment on appeal from the Municipal Court of Cincinnati.

Two cases in prohibition have recently been decided by the Supreme Court. The syllabus of each of these cases is to be found in No. 49, Ohio Law Reporter for March 6, 1916, Vol. 13, pages 43 and 44—being *State, ex rel Garrison*, v. *Brough et al*, and *State, ex rel Nolan*, v. *ClenDening*. In these cases, in which we have seen advanced copies of the opinion of the court not yet published, the object and use of the writ of prohibition is clearly stated. Paragraph 1 of the syllabus of the first named case is as follows:

"The writ of prohibition is an extraordinary legal remedy, whose object is to prevent a court or tribunal of peculiar, limited or inferior power, from assuming jurisdiction of a matter beyond its cognizance. The writ can not be made to serve the purpose of a writ of error to correct mistakes of the lower court in deciding questions of law within its jurisdiction."

Paragraphs 2, 3 and 4 of the syllabus of the second case are:

"2. The writ of prohibition is a high prerogative writ to be used with great caution in the furtherance of justice and only where there is no other regular, ordinary and adequate remedy.

"3. The writ may be invoked against any inferior court or inferior tribunal, ministerial or otherwise, that possesses incidentally judicial or *quasi* judicial powers, to keep such courts and tribunals within the limits of their own jurisdiction.

"4. If such inferior courts or tribunals in attempting to exercise judicial or *quasi* judicial power are proceeding in a matter wholly or partly outside of their jurisdiction, such inferior courts or tribunals are amenable to the writ of prohibition as to such *ultra vires* jurisdiction."

If, therefore, the court of insolvency is now wholly without jurisdiction to hear and determine a case for divorce and alimony, it would become the duty of this court to allow the issue of the writ to prevent it from undertaking to exercise such jurisdiction.

The main question to be determined is whether the Court of Insolvency of Hamilton County has jurisdiction to try an action tor divorce and alimony after December 31, 1914.

The Court of Insolvency of Hamilton County is a local court established by act of the General Assembly under authority granted by Section 1, Article IV of the Constitution. The constitutionality of the law creating it was upheld in *State, ex rel,* v. *Archibald,* 52 O. S., 1. An amendment to the act conferring certain jurisdiction upon it (93 O. L., 669) was held invalid as being obnoxious to Section 26, Article II, in so far as it attempted to confer exclusive jurisdiction on that court of various matters within the jurisdiction of the court of common pleas.

The constitutionality of the law establishing the Insolvency Court of Cuyahoga County, which is similar to that of Hamilton county, was directly sustained in *State, ex rel,* v. *Bloch,* 65 O. S., 370. In discussing the power of the Legislature in respect to the establishment of such courts and fixing their jurisdiction, the court uses the following language in the opinion in that case, at page 391:

"The power is here undoubtedly granted to the General Assembly to create courts other than those enumerated in the section; and the material inquiry is, what *other courts* may be so created? The answer is found in the language of the section, which is, 'such' other courts 'as the General Assembly may from time to time establish.' That language vests in that body full power to determine what other courts it will establish, local, if deemed proper, either for separate counties or districts, and to define their jurisdiction and powers. The only limitation placed upon the exercise of that power is that the courts so established shall be inferior to the Supreme Court, subject, of course, to the further qualification that no legislation can alter the judicial system established by the Constitution, nor interfere with the courts designated by that instrument as the recipi-

ents of the judicial power. Apparently there could have been but one purpose in making this special grant of legislative power, and that was to enable the General Assembly to meet the public needs for additional courts, as they might arise in different parts of the state. It is hardly probable that it was considered or contemplated that the same necessities in that respect would arise at the same time in all parts of the state. Hence, the power was given to establish these additional courts from time to time, as in the opinion of the legislative body the public exigencies should appear to render necessary or proper.''

There is, therefore, no question as to the power of the General Assembly to create or to abolish such a court as it may deem best. Its right to abolish such a statutory court at any time was sustained in *State, ex rel,* v. *Wright,* 7 O. S., 333.

The entire jurisdiction of such a court must be derived from the statutes. The power to create the court necessarily implies the duty to define the jurisdiction, and this jurisdiction can be changed by proper laws from time to time as the General Assembly may determine.

The power to grant a divorce is a statutory and not a common law power. 14 Cyc., 581; *Olin* v. *Hungerford,* 10 O. S., 268, 270. It is a judicial power, not legislative. *Bingham* v. *Miller,* 17 Ohio, 445.

Under Section 1637, General Code, prior to its last amendment, the court of insolvency in Hamilton county had jurisdiction in actions of divorce and alimony concurrent with that of the court of common pleas. When Section 1637 was amended February 17, 1914 (104 O. L., 179), becoming effective May 17, 1914, that jurisdiction was distinctly taken away after December 31, 1914. The language is so explicit that there can be no doubt as to the intention of the Legislature; and this is made more apparent, if that were possible, by the fact that on the same day Section 1639, General Code, was amended to provide for a division of ''domestic relations'' in the court of common pleas in Hamilton county, in which one of the judges of that court should sit, to whom should be assigned all juvenile court work and all divorce and alimony cases (104 O. L., 176). Under this

act the common pleas judge to be elected to fill the division of domestic relations would become vested with the power to try such cases at the same time that such power was withdrawn from the insolvency court.

It is argued, however, that no provision was made for the transfer of pending and undisposed of cases, from the insolvency to the common pleas court. That there should be on December 31, 1914, any such pending cases with no provision for transfer, is to be deplored. But it must be noted that this amendment was passed more than ten months before the date fixed for the withdrawal of this jurisdiction. The divorce suit in question here was filed more than six months after its passage and over three months after it became effective. The common pleas court then had concurrent jurisdiction, and the passage of this act must be considered as notice to the members of the bar and the public that a time limit had been fixed for the trial of such actions in the insolvency court. Where parties desired to run no risk of having their proceedings prove abortive because of inability to secure a final decree during the year 1914, they were at liberty to institute such proceedings in the common pleas court where there was a continuing jurisdiction. Such a course was probably anticipated by the General Assembly in providing what it doubtless deemed a sufficient time, before the withdrawal of its jurisdiction, for the disposition by it of divorce cases then pending in the insolvency court.

If the court had been abolished without any provision for transfer of cases to another court, there could have been no contention that it should persist after that time to hear and determine cases until all its pending cases had been tried and adjudged. There is no question but that all of its pending cases would have been terminated and held for naught. The same result would follow the withdrawal of its jurisdiction to hear and determine any particular class of cases, as to such cases.

"Whenever a statute from which a court derives its jurisdiction in particular cases is repealed, the court can not proceed under the repealed statute, even in suits pending at the time of

the repeal, unless they are saved by a clause in the repealing statute. For the effect of the repeal of a statute is to obliterate the statute repealed as completely as if it had never been passed, and it must be considered as a law that never existed, except for the purposes of those actions or suits which were commenced, prosecuted and concluded while it was an existing law. This rule holds true until the proceedings have reached a final judgment in the court of last resort, for this court, when it comes to pronounce its decision, conforms to the law then existing, and may; therefore, reverse a judgment which was correct when pronounced in the subordinate tribunal whence the appeal was taken, if it appears that pending the appeal a statute which was necessary to support the judgment of the lower court has been withdrawn by an absolute repeal. If the only law purporting to confer jurisdiction upon the court to try the case is void, then all the acts of the court are without authority and also void. In such case no intendment of the law, or presumption of fact, can be made in favor of its jurisdiction." (7 R. C. L., 1031.) *Ball* v. *Tollman,* 135 Cal., 375; *Hunt* v. *Jennings,* 5 Blackf. (Ind.), 195; *Todd* v. *Landry,* 12 Am. Dec. (La.), 479, and see note on page 480 and cases there cited.

"The repeal of all statutes relating to divorce deprives the courts of their jurisdiction in divorce actions and terminates their jurisdiction even in pending actions unless the repealing act contains a saving clause." (14 Cyc., 583.) *Grant* v. *Grant,* 12 S. C., 29.

If the law purporting to confer jurisdiction on the court to try a case is void, no intendment of law or presumption of fact can be made in favor of its jurisdiction. A decree of divorce granted without jurisdiction of the subject-matter is void. *In re Christiansen,* 17 Utah, 412.

It is contended, however, that the general saving clause found in Section 26, General Code, must be considered as applying to all cases for divorce and alimony pending in the insolvency court January 1, 1915, and by reason of that provision it became the duty of that court to hear and determine such pending cases after that date.

Section 26 is as follows:

"Whenever a statute is repealed or amended, such repeal or amendment shall in no manner affect pending actions, prosecutions or proceedings, civil or criminal, and when the repeal or amendment relates to the remedy, it shall not affect pending actions, prosecutions or proceedings, unless so expressed, nor shall any repeal or amendment affect causes of such action, prosecution or proceeding, existing at the time of such amendment or repeal, unless otherwise expressly provided in the amending or repealing act."

Many cases are cited by respondent to show the wide application of this act, and there is no doubt that it is applicable to repeals and amendments "unless otherwise expressly provided in the amending or repealing act."

In the instant case can it be said that it is not expressly provided in the amending act that this jurisdiction shall not exist after a date certain? It is not a mere elimination of the words describing the particular subject-matter in which jurisdiction had been previously given, as might have been accomplished by omitting the words "and actions for divorce and alimony" from clause 9, instead of allowing them to remain and adding the exception in which the jurisdiction is wholly withdrawn after a certain date.

In the opinion of the court there is an express provision which shows that Section 26 was not intended to apply.

The case of *Friend* v. *Levy*, 76 O. S., 26, is directly in point. The second clause of the syllabus is as follows:

"A general rule of interpretation of statutes is, that when an act of the Legislature is repealed without a saving clause, it is considered, except as to transactions passed and closed, as though it had never existed. This rule is largely superseded by Section 79, Revised Statutes, which provides that: (quoting section) ; but one Legislature can not prescribe binding rules for the interpretation of the statutes passed by a subsequent Legislature and while in the absence of anything in the statute indicating a different intent the legal presumption is that the Legislature intended the statutory rule to apply, yet when it clearly manifests a different intention the statutory rule does not apply."

*Dabney* v. *Dabney,* 20 App. Cases (Dist. Columbia), 440, is relied upon by respondent as directly in point. In that case an action was brought for divorce on the grounds of wilful desertion and abandonment, the statute then providing for divorce on such grounds, but before the trial the statute was amended to provide for divorce only on the grounds of adultery, after which the trial court sustained a demurrer to the petition and held that it had no jurisdiction to try the case on the charge made because of the change in the law. The case was appealed, and before trial on appeal Congress passed an act providing that all actions for divorce pending at the time the change in the divorce law went into effect might be proceeded with and disposed of under the provisions of the statutes in force previous to that amendment. The majority of the court, acting under this new enabling law, reversed the trial court, while the chief justice, as the minority of the court, held that in his opinion the general saving clause which was similar in terms to our Section 26, General Code, would have applied to permit the trial court to proceed to hear and dispose of the case. We can not regard this minority opinion as authority, but must regard that case as decided by the majority of the court by virtue of the later statute. It must also be observed that divorce jurisdiction had not there been wholly withdrawn from that court, but there had only been a change made in what would constitute legal grounds.

Finding, as we do, that the court of insolvency in Hamilton county is without jurisdiction in actions for divorce and alimony after December 31, 1914, it becomes unnecessary to consider the other ground urged—that it was without jurisdiction in this particular action because the plaintiff had not been a resident of Ohio for the year before the filing of his action.

It might be said, however, that the question raised involves the determination of fact and law which would depend upon the evidence. As already stated, this writ can not be made to serve the purpose of a writ of error to correct in advance possible mistakes of the lower court in deciding questions of law within

its jurisdiction. It might, however, be possible in a divorce proceeding, where a decree once entered may be claimed to be final notwithstanding error had intervened in the trial, that a case might arise where the facts were so clear and the intention to commit error so avowed that a court of superior jurisdiction might intervene by prohibition. In this case, however, such a situation is not presented. The evidence submitted to this court is not absolutely conclusive as to the plaintiff's residence, nor is it claimed to be identical in every respect with that heard by the court of insolvency. This court would therefore not anticipate in advance of a decision by the trial court, that such decision would not be in accordance with the law and the evidence.

Because of want of jurisdiction of the subject-matter of the action, a writ of prohibition is allowed.

JONES (E. H.), J., and GORMAN, J., concur.